**FILED**
**MARCH 10, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36318-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY BRYANT BLOCHER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Timothy Blocher appeals legal financial obligation (LFO) terms imposed in his judgment and sentence on convictions for felony violation of a no-contact order and bail jumping. He contends he was indigent at the time of his August 2018 sentencing and the court lacked authority to impose a $200 criminal filing fee and an obligation to pay interest on his LFOs. In a pro se statement of additional grounds

(SAG), Mr. Blocher challenges the sufficiency of the evidence and alleges prosecutorial misconduct.

We affirm the convictions and remand with directions to strike the criminal filing fee and interest payment obligation from his judgment and sentence.

FACTS AND PROCEDURAL BACKGROUND

Timothy Blocher was romantically involved with Jeanne Malinosky for a time but it ended badly, and Ms. Malinosky obtained a no-contact order against Mr. Blocher in November 2015. He violated the order several times. The prosecution below began with a charge for his third no-contact order violation.

Mr. Blocher was arrested and charged after Ellensburg Patrol Officer Andrew Hall saw him walking on Ruby Street at around 3:00 a.m. on a morning in April 2016, and stopped to question him. Upon making contact, Officer Hall recognized Mr. Blocher, who he knew to be subject to an order prohibiting him from being within 1,000 feet of Ms. Malinosky's nearby residence. Mr. Blocher admitted being aware of the order. After confirming that the order was in effect, and confident that Mr. Blocher was well within 1,000 feet of Ms. Malinosky's residence, Officer Hall placed him under arrest. Mr. Blocher was charged with felony violation of the no-contact order.

At Mr. Blocher's arraignment on the charge in May 9, 2016, the trial court entered a scheduling order that included a status conference the following month, on June 16. When Mr. Blocher's case was called on the morning of June 16, his lawyer was present,

2

but Mr. Blocher was not. Mr. Blocher's lawyer told the court that his client informed his office that "he was scheduled to have some surgery on his foot today and that's why he's not here." Report of Proceedings (RP) at 6. At the State's request, the trial court issued a bench warrant for his failure to appear.

Mr. Blocher appeared about a week later and the bench warrant was quashed. The State was allowed to amend the information to include a charge of bail jumping for Mr. Blocher's failure to appear on June 16.

The case eventually proceeded to a two-day jury trial in 2018. At trial, Mr. Blocher testified on his own behalf, telling jurors that on the morning of his arrest in April 2016, he was suffering both from a bone infection in his foot and from diabetes. He testified he had been trying to walk to Kittitas Valley Hospital to get help for a diabetic episode he was experiencing and, being in a delusional state, was not fully aware of his location when Officer Hall contacted him. To support his diminished capacity defense, Mr. Blocher presented testimony from two doctors who addressed the effect that his medical conditions and medications could have on his cognitive functioning.

Mr. Blocher testified that missing his June 16 court date was also due to a medical emergency. He testified that early that morning he went to the emergency room because he was having trouble with his blood glucose meter, and the issue was not resolved until the end of the day, after visits to both Kittitas Valley Hospital and Yakima Valley Memorial Hospital.

3

The jury found Mr. Blocher guilty as charged. At his sentencing, which took place in August 2018, the court imposed standard range sentences and imposed $800 in LFOs that included a $200 criminal filing fee. Its judgment and sentence provided that Mr. Blocher's LFOs bear interest from the date of judgment. Mr. Blocher appeals.

ANALYSIS

The only issue raised by Mr. Blocher's opening brief is whether the trial court erred in imposing the $200 criminal filing fee and including a provision in his judgment and sentence that his LFOs (which do not include restitution) bear interest.

Engrossed Second Substitute House Bill 1783, 65th Leg., Reg. Sess. (Wash. 2018), which became effective June 7, 2018, prohibits trial courts from imposing a criminal filing fee on a defendant who is "indigent" at the time of sentencing as that term is defined by RCW 10.101.010(3)(a)-(c). It also eliminated interest accrual on nonrestitutionary LFOs as of June 7, 2018. RCW 10.82.090(1). Although Mr. Blocher failed to object to these terms at sentencing and has not demonstrated that his indigence falls within the definition provided by RCW 10.101.010(3)(a)-(c), the State concedes error and does not object to his request for relief. We accept the State's concession and will order the relief.

4

STATEMENT OF ADDITIONAL GROUNDS (SAG)

Mr. Blocher filed a SAG raising two grounds for relief: (1) the State presented insufficient evidence of both the no-contact order violation and bail jumping, and (2) prosecutorial misconduct.

*Insufficient evidence: bail jumping.* Mr. Blocher contends the State presented insufficient evidence of bail jumping because his evidence showed his failure to appear on June 16 was due to uncontrollable circumstances.

"To convict a person of bail jumping, the State must prove that the defendant '(1) was held for, charged with, or convicted of a particular crime; (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and (3) knowingly failed to appear as required.'" *State v. Boyd*, 1 Wn. App. 2d 501, 516, 408 P.3d 362 (2017) (internal quotation marks omitted) (quoting *State v. Williams*, 162 Wn.2d 177, 183-84, 170 P.3d 30 (2007)). "Uncontrollable circumstances" is a statutory affirmative defense to bail jumping. RCW 9A.76.170(2).

The jury was correctly instructed on the "uncontrollable circumstances" defense:

It is a defense to a charge of bail jumping that:

(1) uncontrollable circumstances prevented the defendant from personally appearing in court; and

(2) the defendant did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear; and

(3) the defendant appeared as soon as such circumstances ceased to exist.

> For the purposes of this defense, an uncontrollable circumstance is an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of man such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.

Clerk's Papers at 335. A defendant must establish the affirmative defense of uncontrollable circumstances by a preponderance of the evidence. *See State v. Jeffrey*, 77 Wn. App. 222, 225, 889 P.2d 956 (1995).

When reviewing a challenge to the sufficiency of evidence based on an affirmative defense having a preponderance standard, the inquiry is whether, considering the evidence in the light most favorable to the State, a rational trier of fact could have found that the accused failed to prove the defense by a preponderance of the evidence. *City of Spokane v. Beck*, 130 Wn. App. 481, 486, 123 P.3d 854 (2005) (citing *State v. Lively*, 130 Wn.2d 1, 17, 921 P.2d 1035 (1996)). Proof of a defense by a preponderance of the evidence merely means the greater weight of the evidence. *Id.* (citing *State v. Harris*, 74 Wash. 60, 64, 132 P. 735 (1913)).

Mr. Blocher's evidence of uncontrollable circumstances was not strong. His own testimony, which the jury was not required to believe, was supplemented by the testimony of his lawyer's paralegal, who was in touch with Mr. Blocher on June 16 about his failure to appear. Mr. Blocher offered and the court admitted electronic mail

6

reflecting reports the paralegal had passed along to Mr. Blocher's lawyer that day. At

10:25 a.m., the paralegal reported:

> When I finally got a hold of him this morning he said he was waiting in line
> for his "surgical procedure." He said he doesn't have any paperwork
> because it's not really a "surgery" but a "surgical procedure" where they're
> cutting dead skin and stuff off his foot. He was told to go there on this day
> and it's first come, first serve. He'll get us ppwk asap today when he's
> done he says.

Ex. D-102. At 11:05 a.m., she reported:

> He called, said they're admitting him. I told him to have them fax me at
> least the ER intake.

*Id.* At 4:38 p.m., she reported:

> He called earlier, said he was released w/o having the procedure cause his
> blood sugar was too high. He said they kept him cause it was over the 600s
> again but they got it down to 400, released him and said they want a week's
> worth of stable numbers before they do procedure.

*Id.*

Another defense exhibit admitted without objection was a medical record from

Yakima Valley Memorial Hospital that identified Mr. Blocher's complaint on admission

on June 16 as "r foot problem." Ex. 103. It identified his triage time as 11:06, and his

"Urgency" as "3-Level Three." *Id.*

A rational trier of fact could have found that Mr. Blocher failed to prove a medical

problem requiring immediate hospitalization or treatment.

*Insufficient evidence: No-contact order violation.*  As for the no-contact violation conviction, Mr. Blocher contends the State failed to prove the essential element that he "knowingly" entered, remained, or came within 1,000 feet of Ms. Malinosky's residence on the early morning of April 22.

Ms. Malinosky testified at trial that Mr. Blocher had lived with her at her Ruby Street home before they broke up in November 2015.  Officer Hall testified at trial that following Mr. Blocher's arrest, he traveled back and obtained an accurate measurement of the distance from his contact with Mr. Blocher to Ms. Malinosky's home.  He testified, "From the point that I saw him to the—to the edge of her property was two hundred and sixty-two feet."  RP at 199.  The officer also testified that when he spoke with Mr. Blocher on the early morning of the arrest, Mr. Blocher appeared coherent, behaved normally, and said nothing about seeking or needing medical attention.

Essentially, Mr. Blocher's SAG reargues credibility and the weight of the evidence—matters on which we must defer to the jurors.  The State's evidence of a "knowing" violation was sufficient.

*Prosecutorial misconduct.*  Mr. Blocher voices a number of complaints about misconduct by the State, but without sufficient clarity about the nature of the misconduct or where, in the record, we can determine that it *was* misconduct.  Although Mr. Blocher is not required to cite to the record in a SAG, he must provide enough information about the "nature and occurrence of the alleged errors" that we do not have to go searching for

them.  RAP 10.10(c).  His identification of the nature and occurrence of the alleged errors is insufficient for review.

We affirm the convictions and remand with directions to the court to strike the criminal filing fee and the statement in the judgment and sentence that his legal financial obligations shall bear interest.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.